GRIFFIN, J.
This action was brought by Michael Bor-check [“Borcheck”] against his no-fault insurance carrier, State Farm Automobile Insurance Company [“State Farm”], to recover payment of medical claims and lost income as a result of his involvement in a collision on December 1, 1996. Specifically, he alleged that State Farm wrongfully failed to pay his medical claim for shoulder surgery in August 1997, in the amount of $31,319.80.
State Farm answered, denying Bor-check’s allegations and asserting, inter alia, the affirmative defense that Borcheck failed to “establish the medical necessity, reasonableness and relatedness of those medical benefits sued upon.” Borcheck had previously injured his shoulder in 1995 during a fall at his condominium.
*483 On January 20, 1999, the trial court entered an amended uniform order setting the case for trial on May 18, 1999, and setting dates for completion of pre-trial matters. The order also required each party to serve their witness list no later than forty-five days before the pre-trial conference set for May 3, 1999. The order further provided that counsel for both parties must attend a meeting ten days prior to the pre-trial conference to exchange exhibits.
On March 24, 1999, State Farmed requested a compulsory medical examination of Borcheck; Borcheck objected. The trial court denied Borcheck’s objection and ordered the examination “to be scheduled within 12 days of this date.” State Farm asserts in their brief that the examination was scheduled for April 26,1999.
On April 28, 1999, State Farm served Borcheck with its pre-trial compliance. State Farm included Dr. Thomas Broder-ick, M.D., the physician who conducted the compulsory examination, in its witness list. On April 30, 1999, the trial court entered an order continuing the trial date.
The jury trial commenced on June 15, 1999. On the morning of jury selection, defense counsel provided plaintiffs counsel with a copy of Dr. Broderick’s compulsory examination report.
During Borcheck’s case-in-chief, defense counsel attempted to question Borcheck on cross-examination about certain Polaroid photographs depicting damage to Bor-check’s vehicle as a result of the accident. Plaintiffs counsel objected to use of the photographs, claiming unfair surprise because defense counsel failed to comply with a request to produce and had violated the pre-trial order pertaining to the exchange of exhibits. Specifically, plaintiffs counsel requested: “I would ask the Court to find that by allowing Mr. Gerjel [defense counsel] to use these photographs in any connection in this trial, showing them to Mr. Borcheck or any of his doctors, would be trial by ambush. It would be unfair. He has had other opportunities .... ” The trial court sustained the objection but allowed defense counsel to proffer the photographs. After the proffer, the trial court reiterated its ruling:
COURT: Do you [defense counsel] understand the Court’s ruling? They’re not to be referred to again.
[DEFENSE COUNSEL]: I don’t understand the Court’s ruling, Your Hon- or.
COURT: Counsel, you understand the Court’s ruling, the objection is sustained.
[DEFENSE COUNSEL]: Okay.
The next day, Officer Scott Sparkman of the Lady Lake Police Department, the investigating officer of Borcheck’s accident on December 1, 1996, testified at trial regarding his observations of the accident scene, after refreshing his memory with his accident report and viewing the Polaroid photographs of the accident.
Dr. Thomas J. Broderick also testified live at trial as State Farm’s witness. Dr. Broderick testified that he had relied on Borcheck’s medical records and the deposition of Borcheck’s physician in forming his opinion. Dr. Broderick also relied upon Borcheck’s medical history. He said Borcheck had told him that Borcheck had nominally injured his shoulder in an unrelated accident in 1995. Borcheck had also told him that his vehicle sustained approximately $3,500 — $4,000 in damage, and that he was relatively pain free after his operation in July of 1997.
Dr. Broderick opined that Borcheck suffered from “status postop decompression of the left shoulder times two with removal of the anterior acromion and distal end of the clavicle and also repaired the rotator cuff times two.” Dr. Broderick then opined on direct examination that it was “unlikely” that Borcheck’s shoulder injury was a result of the December 1, 1996 accident:
Q. And, Doctor, did that information provide you with enough background to *484 render an opinion within a reasonable degree of medical probability as to whether any injury resulted from the accident in December of 1996?
[PLAINTIFF’S COUNSEL]: Objection. Irrelevant as to whether an injury—
COURT: Objection is overruled.
[PLAINTIFF’S COUNSEL]: Thank you, Your Honor.
Q. Go ahead.
A. Well, I was able to vieiv some pictures of the vehicle where it was rear-ended on the left rear end and it looked like it was mostly cosmetic damage.
[PLAINTIFF’S COUNSEL]: Objection, Your Honor, with regard to the reference to the photographs. I move to strike the answer as nonresponsive and also not in compliance with yesterday’s ruling of the Court.
COURT: Objection sustained.
[WITNESS]: It was my opinion that, taking all things in consideration, it would be highly unlikely for him to have sustained any significant injury to his shoulder as a result of the accident of December 1,1996.
Q. And that opinion is within a reasonable degree of medical probability?
A. Yes.
During cross-examination, Dr. Broderick admitted that his conclusion was not contained in his report recently provided to plaintiffs counsel:
Q.... And your — the opinion that you just expressed about it being highly unlikely for Mr. Borcheck to sustain any significant injury as a result of the 12/1/96 accident, is that opinion contained in your report? And I just can’t find it. It goes on for several pages. Feel free to refer to your report.
[WITNESS]: Could we have a little side-bar here?
You just told me not to say something so, you know. There’s something—
COURT: Just answer the question. Does that opinion occur in the report, basically is the question.
[PLAINTIFF’S COUNSEL]: I’m looking for the words “significant injury.” COURT: Be more clear with your question.
[WITNESS]: Okay. Listen. I requested to see — I said, I would like to see pictures of the vehicle and see how much damage is done to the vehicle before I can render an opinion.
Q. Okay. But my question is, your opinion about the significant injury being related to the accident of 12/1/96, I just — I haven’t had time to look for that in your report. Is that in your report?
A. No, that’s not in my report.
Q. Okay.
A. Because I think the report was generated prior to my getting the remainder of the information.
Q. Okay. Thank you.
Now, this report, it was just dictated over the weekend, is that correct?
A. Correct.
On re-direct, Dr. Broderick testified that he had changed the opinion in his report based upon his review of the Polaroid photographs presented to him by defense counsel subsequent to his report:
Q. After seeing the additional information that you talked to counsel—
[PLAINTIFF’S COUNSEL]: Your Honor, I object.
[COURT]: Sustained.
Q. Is your opinion today different than the opinion in your report?
A. No. If you look at the last sentence
[[Image here]]
Q. Read it, Doctor.
[[Image here]]
Had the automobile' accident not occurred, it is my opinion he would have eventually have come to the second operative procedure.
*485 And how much the automobile accident speeded up the process in regard to the second operative procedure being performed is in question.
Q. Did you obtain any information inconsistent with what Mr. Borcheek told you about the severity of the accident?
[PLAINTIFF’S COUNSEL]: Objection.
[DEFENSE COUNSEL]: Judge, that’s just a yes or no.
COURT: What’s the basis of your objection?
[PLAINTIFF’S COUNSEL]: Referring to matters that have been limited by the Court’s earlier ruling, vis-a-vis, photographs.
COURT: Objection overruled.
[PLAINTIFF’S COUNSEL]: Thank you.
Q. Just yes or no, Doctor.
A. Yes.
The jury returned a verdict finding that “the shoulder surgery performed by Dr. Winters on August 19, 1997,” was unrelated to the December 1,1996 accident.
On June 25, 1999, Borcheek moved for a new trial, arguing that the trial court erred in (1) allowing Officer Sparkman to testify concerning matters inadmissible pursuant to the accident report privilege; (2) allowing Sparkman to testify after viewing Polaroid photographs of damage to Borcheck’s vehicle; (3) allowing Dr. Broderick to testify since his report was late; (4) allowing Dr. Broderick to testify because of his “substantial” reversal of opinion; and (5) allowing Dr. Broderick to testify after having viewed the Polaroid photographs. The trial court denied Bor-check’s motion.
 The lower court was correct in ruling the photographs were inadmissible and not to be referred to in the trial. The error was in failing to be consistent in its ruling. By ruling them inadmissible and yet failing to enforce its admonition to defense counsel that the photographs were not to be referred to, plaintiffs counsel was in an impossible position. He was seen by the jury to be hiding clearly relevant evidence, which the court nevertheless allowed the defense witnesses to describe, characterize and utilize to fashion their testimony. This was unfair to the plaintiff. Moreover, the transcript shows that defense counsel had embarked on an intentional course of conduct to evade the court’s sanctions for his discovery and pretrial order violations. The trial court should have enforced its own order. By not doing so, the wrong party ended up punished for these tactics. Appellant is entitled to a new trial.
REVERSED and REMANDED.
W. SHARP and PLEUS, JJ., concur.