[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-10776

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 19, 2011
JOHN LEY
CLERK

D. C. Docket No. 3:08-cv-00660-HES-MCR

DAVID ANGELUCCI and
KATHLEEN ANGELUCCI,

Plaintiffs-Appellants,

versus

GOVERNMENT EMPLOYEES  INSURANCE COMPANY,
a foreign corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 19, 2011)

Before WILSON, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

This case raises two challenges to evidentiary rulings made by the trial court.

The first involves a violation of the Florida privilege against the use of accident reports and their contents at trial. The second ruling concerns a violation of the parties' pre-trial agreement not to discuss the Plaintiffs' finances. Because we agree with the Angeluccis that the district court abused its discretion when it allowed testimony about the accident report, we vacate and remand for a new trial.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Appellants, David and Kathleen Ann Angelucci, were involved in a car accident while on vacation in Florida on June 15, 2007. David testified that he immediately felt a sharp pain in his neck, and Kathleen testified David appeared to be in pain and was holding his neck. Their cousin also testified that David grabbed his neck, had trouble moving it, and had trouble getting out of the car. Immediately after the accident, Kathleen drove David to a walk-in clinic but was told that an x-ray technician was not on duty. David chose not to go to the emergency room then so as not to disappoint his children, who wanted to go to the beach. After a short visit to the beach, during which David sat in the car, the Angeluccis returned to the cousin's house, and another family member drove David to the emergency room. A CT scan revealed evidence of a disruption of a previous cervical fusion and David later sought treatment from his orthopedic surgeon at home who also

2

found evidence of a disruption at the site of a previous cervical fusion.

David had been injured in two serious car accidents before the 2007 accident. In 1996 he was rear-ended, sustained a neck injury, and had fusion surgery at the C5-C6 level. In 2003 he was again rear-ended and underwent a fusion at the next lower level, C6-C7. After the 2003 accident he retired with disability benefits from his job as a tow truck operator for the Connecticut Department of Transportation.

As a result of the 2007 accident, the Angeluccis sought uninsured motorist benefits from Appellee GEICO. GEICO denied those benefits because it claimed that David had not suffered any permanent injuries and so did not meet Florida's automobile no-fault threshold, found at Fla. Stat. § 627.737. Thereafter, the Angeluccis filed suit against GEICO, seeking the benefits. The parties disputed the severity of the impact suffered during the accident, with the Angeluccis portraying the accident as serious and GEICO claiming it was a minor impact accident. Each side produced experts who testified about whether David had suffered a permanent aggravation of a pre-existing neck injury, specifically whether the accident had caused a disruption of two previous cervical fusion surgeries. Two of the Angeluccis' expert witnesses were David's treating physicians who had been treating him since before 2003, and both had participated in his cervical fusion

3

surgery. All three of his experts testified that the 2003 scans showed a bony fusion or at least a fibrous union which had been disrupted by the 2007 accident. GEICO pointed out that David's treating physicians did not agree on where in the 2007 scan this was demonstrated. GEICO's neurosurgeon expert testified there was a fibrous union in 2007 but that it had not been disrupted by the accident. Another GEICO expert, a radiologist, testified that there was no evidence of a disruption of the 2003 surgery. GEICO's third expert, an orthopedist who had treated David in the past, testified that the 2003 surgery had been successful but did not testify about the 2007 accident. He testified that he had seen David a month after the 2007 accident and that David did not tell him about it. Further, he testified that David's condition was persistent and remained unchanged since 2004.

GEICO noted that David's 2004 application for disability benefits claimed pain in his lower back and neck accompanied by depression and that he was unable to do yardwork or housework. David testified that the 2003 surgery had resolved most of the pain but that, after the 2007 accident, he has had continuous pain in the back of his neck. GEICO disputed David's testimony and showed surveillance video of David changing a bicycle tire, riding a motorcycle, operating his truck, and filling a gas can at a gas station.

The first evidentiary issue arose when GEICO called the officer who had

4

investigated the 2007 accident. GEICO asked the officer about her observations at the accident scene as well as whether anyone had reported any injuries. The officer reported that she neither saw any injuries nor were any reported to her. She did admit that she did not know if anyone had sought medical care after leaving the scene. The district court had granted the Angeluccis' pre-trial motion in limine to exclude any statements to the investigating officer at the accident scene. Before the examination of the officer began, GEICO had sought leave to ask these questions and the district court had permitted them over objection. At closing argument, counsel for GEICO reiterated and emphasized that the officer testified that David had not complained of an injury.

In the second instance, counsel for GEICO asked David if the truck in the surveillance video was new, whether he owned the truck, and whether he owned the motorcycle. Then counsel asked if the Angeluccis owned any rental properties in North Carolina, to which David answered yes. The Angeluccis moved for a mistrial on the ground that the question violated the parties' pre-trial agreement not to inquire about the Angeluccis' real estate holdings and prior settlements. GEICO argued successfully that the Angeluccis had opened the door to the question with their testimony that implied they were poor; GEICO argued that the question was intended to address earlier testimony by Kathleen that they had moved from

5

Connecticut because it was too expensive. The court denied the Angeluccis' motion because it ruled they had opened the door to such questions, the pre-trial ruling and agreement could not act as a shield when they pursued those lines of questioning, and the testimony elicited by GEICO did not address the subject of prior settlements or pinpoint the source of the money as coming from those settlements. The Angeluccis attempted to mitigate the evidence by calling Mrs. Angelucci back to the stand, where she testified that the properties were purchased with the proceeds of the sale of their house in Connecticut and earned $65 and $160 a month.

After the jury returned a verdict for GEICO, the Angeluccis moved for a new trial. The district court denied the motion, reasoning that the officer's statements regarding her knowledge of injuries at the scene of the accident did not violate the accident report privilege. Further, the questions about the Angeluccis' rental properties did not warrant a new trial because the Angeluccis opened the door to questions about their finances and were able to rebut the testimony. Finally, the court stated that "the verdict returned by the jury was supported by the cumulative evidence that was admitted during trial."

## I. DISCUSSION

A.    GEICO's questions to the police officer about statements made to her

Appellants point to Fla. Stat. § 316.066(5), which prevents the use of an accident report and statements made for the purpose of creating an accident report. The statute states, in pertinent part:

> Except as specified in this subsection, each crash report made by a person involved in a crash and any statement made by such person to a law enforcement officer for the purpose of completing a crash report required by this section shall be without prejudice to the individual so reporting. No such report or statement shall be used as evidence in any trial, civil or criminal. . . .

Florida Statute § 316.066(5) (2010).  "The purpose of the statute is to clothe with statutory immunity the statements and communications that a driver, owner, or occupant of a vehicle is compelled to make in compliance with the statutory duty under section 316.066(1) and (2)." White v. Consol. Freightways Corp., 766 So. 2d 1228, 1232 (Fla. 1st DCA 2000).

The Angeluccis argue the case of Thomas v. Gottlieb, 520 So. 2d 622 (Fla. 4th DCA 1988), is analogous to their case.  There, the parties contested whether Thomas suffered the injury to his knee at the accident or in another incident.  Id. at 622.  Both sides put on witnesses supporting their positions and the Gottliebs called the investigating officer.  Id.  The officer did not recall the accident so he testified based on the accident report.  Id. at 622-23.  While the reviewing court

7

held that questions about the officer's observations were permissible, the Gottliebs fell afoul of the accident report privilege by asking questions about whether anyone complained of an injury. Id. at 623. This, the court held, fell squarely within the privilege. Id. It did not matter that the questions related to what Thomas did not say. Id. Thomas had affirmatively testified that he had reported the injury to the officer. The court noted that the questions to the officer about the statements touched on both the fact of the injury and the credibility of Thomas and concluded that "[t]he statutory privilege applies to the use of the statements for impeachment as well as for substantive evidence." Id. The court concluded that the jury must have determined that Thomas did not suffer his injury during the accident at issue and, given the conflicting testimony, the admission of the officer's statement was harmful. Id. We conclude that Thomas is controlling and mandates our holding that the district court committed error in permitting GEICO to ask the police officer about reports of injuries at the scene. As in Thomas, the officer's testimony that no injuries were reported to her falls squarely within the privilege. Also as in Thomas, the officer's testimony here touched both on the fact and seriousness of the injury, and on David Angelucci's credibility.

Having concluded that the district court committed error, we next examine whether the error is reversible error. This Court reviews rulings on the

8

admissibility of evidence for an abuse of discretion and will not overturn an evidentiary ruling unless the moving party establishes a substantial prejudicial effect. Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1276 (11th Cir. 2008). Because we review for abuse of discretion, the Angeluccis must show that there was substantial prejudicial effect.[1]

For several reasons, we conclude that the Angeluccis have established substantial prejudice. First, Florida courts have observed that juries accord special weight to the testimony of a police officer. White, 766 So. 2d at 1233 (citing Albertson v. Stark, 294 So. 2d 698, 699 (Fla. 4th DCA 1974)). The officer's testimony bolstered GEICO's argument to the jury that David Angelucci was exaggerating. Second, GEICO emphasized this significant evidence in its closing argument to the jury, signifying the importance GEICO itself placed upon the officer's testimony. GEICO's counsel argued in closing: "Officer Fender . . . confirmed there were no complaints of injury at the scene. And that's important

---

[1] GEICO is correct that the prejudice analysis is different in this case than it was in Thomas. In Thomas, the question was an absolute "Did the injury happen at the accident?" so the officer's observations and any reports about an accident were vital, especially given the conflicting testimony from the two sides. Here, the question is "how serious was the injury?" The observations and reports are helpful but not crucial to the question because it is conceivable that David could have suffered a significant injury at the accident without the officer knowing. However, an observation or report that there was an injury would add strength to the Plaintiffs' testimony that it was significant. Similarly, the failure of the parties to report an injury, although not crucial, would add strength to GEICO's position that the injury was not serious.

because Mr. Angelucci didn't say or tell the officer I'm hurt. . . . There were no complaints. So ask yourself whether Mr. Angelucci's family are embellishing what really took place there at the accident scene." Third, the Angeluccis were ambushed by GEICO's use of the evidence. The district court granted the Angeluccis' pre-trial motion in limine excluding statements to the investigating officer made by the Angeluccis or any other persons. Then, GEICO called the police officer as its last witness, and the district court reversed its ruling and admitted the officer's testimony that no one reported any injuries. This sequence of events prejudiced the Angeluccis because their actions could be interpreted "by the jury to be hiding clearly relevant evidence." Borcheck v. State Farm Mut. Auto. Ins., 766 So. 2d 482, 485 (Fla. 5th DCA 2000). Finally, the medical evidence on the crucial issue – whether the injury was serious and permanent – was in genuine conflict, enhancing the significance of this inadmissible evidence and bolstering GEICO's position that David Angelucci was exaggerating the seriousness of his injury.

In light of the foregoing, we conclude that the Angeluccis have established a substantial prejudicial effect. We conclude that this piece of evidence – given as it was by the only apparently unbiased witness – may well have carried the day for GEICO. Therefore, we hold that it was prejudicial to the Angeluccis, vacate the

jury's verdict, and remand for a new trial.

### B. Evidence of the Angeluccis' financial situation

The Angeluccis argue that the district court's denial of their motion for a new trial because of GEICO's questions about their rental properties was reversible error. As noted above, the Angeluccis were able to recall Kathleen, who testified that the properties were purchased with the proceeds of the sale of their residence in Connecticut and generated only $65 and $160 a month. Given the burden, discussed above, of showing that they were substantially prejudiced, the Angeluccis have failed to establish reversible error in this regard.

VACATED and REMANDED.